[Crim. No. 3816. Second Dist., Div. One. Nov. 20, 1944.]

THE PEOPLE, Respondent, v. ARTHUR SIMON, Appellant.

George Stahlman for Appellant.

Robert W. Kenny, Attorney General, and Everett W. Mattoon, Deputy Attorney General, for Respondent.

WHITE, J.—An information filed by the District Attorney of Los Angeles County charged appellant herein and one Sol Goldberg, in two counts, with the violation of section 337a of the Penal Code. In count one, the defendants were accused of violating subdivision 2 of the section, while count two alleged a violation of subdivision 4 thereof.

To the information, and each count therein contained, both defendants entered pleas of not guilty. A jury being waived, the cause proceeded to trial before the court, as a result of which defendant Goldberg was found not guilty on both counts, and the defendant Simon was acquitted of the violation charged in count two, but was adjudged guilty of the offense charged in count one, to wit: violation of subdivision 2, section 337a, Penal Code.

Defendant Simon's motion for a new trial was denied, and he was sentenced to 30 days' imprisonment in the county jail. From the judgment of conviction and the order denying his motion for a new trial, said defendant Simon alone prosecutes this appeal.

The factual background surrounding this prosecution may be thus epitomized: On October 13, 1943, shortly after five o'clock in the evening, three investigators from the office of the District Attorney of Los Angeles County went to apartment No. 206 located in an apartment house at 1825 North Whitley Avenue, in the Hollywood section of Los Angeles County. Upon arriving at apartment 206, the officers knocked on the door thereof. Appellant Simon "answered the door" and was informed that the visitors were officers who desired admission. Without admitting the officers, appellant "went back into the room" and approximately two or three minutes later reappeared and opened the door. Entering the room the officers encountered one Victor Horwitz, who was just emerging unclothed from the bathroom. Another man named Coffey was

also in the room. About 20 minutes after the entry of the officers, defendant Goldberg, who was acquitted, entered the apartment with a brown envelope in his hand, which was taken from him by the officers and he was searched. The envelope contained recording slips and betting markers. A search of the kitchenette in the apartment disclosed the presence on a table of several pieces of paper, scratch sheets and a "little black book." In the oven of the kitchen stove, was a black leather fold or wallet containing an envelope bearing the name of Victor Horwitz. Also found in the apartment, and particularly in the kitchenette thereof, were numerous pieces of paper with figures on them; a "California Turf Digest" and a "Metropolitan Scratch Sheet" with some figures and notations therein. From the person of appellant there was taken a "California Turf Digest," a "black covered notebook" and a package of "recording slips"; but as to the last mentioned "slips" being taken from appellant, the officer later testified at the trial that he "wouldn't be sure of that." At about 5:25 p.m., the telephone in the apartment rang and was answered by one of the officers, from whom a voice on the other end inquired if the last race at Bay Meadows had been run, to which the officer answered "no." Thereupon, the person talking at the other end of the line said "I want Wing and Wing and Joda's Joe in the last race." At 5:30 p.m. the telephone rang and a lady's voice inquired for "Phil," stating that "the steaks were ready." Later "Phil" was identified as Phil Coffey, one of the men present in the apartment. About five minutes later, the phone rang and a lady's voice inquired whether "Ray had left for home yet, as his dinner was ready." Two minutes later the phone rang again and a man's voice "wanted the results of the last race at Bay Meadows." It is noteworthy that none of the phone calls inquired about or concerned appellant. He was asked by the officers "what he was doing up there," to which he replied that he "just stopped by."

It was established at the trial that Victor Horwitz, who was emerging from the bathroom without his clothing when the officers arrived, had rented the apartment here in question. In view of the concession made by appellant that the evidence was sufficient to establish the fact that the apartment with which we are here concerned was a place where bookmaking could have been conducted, it becomes unnecessary to narrate all of the evidence identifying and establishing the fact that

the paraphernalia and documents found in the apartment were of the kind and type ordinarily used in the practice of bookmaking. Appellant did not take the witness stand in his own behalf and no testimony was offered in his defense.

Appellant's sole contention on this appeal is that the evidence is insufficient to sustain the judgment of conviction. Subdivision 2, section 337a, of the Penal Code denounces as a crime, among other things, the keeping or occupancy, for any period of time whatsoever, any room, tenement, etc., with books, papers, or other devices or paraphernalia for the purpose of recording or registering bets or wagers upon the result of any horse race. ■ Manifestly, it is not the actual making of bets, but the occupancy of any room or apartment equipped with books, papers, etc. for the purpose of recording and registering bets which constitutes the offense defined by subdivision 2, section 337a of the Penal Code (*People* v. *Manning*, 37 Cal.App.2d 41, 43 [98 P.2d 748].) But some causal connection must be shown between the paraphernalia found upon the premises and the defendant before a conviction can be sustained (*People* v. *Rabalete*, 28 Cal.App.2d 480, 485 [82 P.2d 707].) Such causal connection must be established as would reasonably justify an inference that the defendant occupied and kept a place where such devices were utilized for the purpose of recording and registering bets. ■ Giving to the evidence herein the greatest possible weight to which the same is entitled, it merely shows that appellant was found in an apartment rented and occupied by another who was there present; that two other persons were also in the apartment; that appellant opened the door for the officers and had upon his person a ''California Turf Digest.'' While such a publication may, as contended by respondent, be used by, and is a convenience to, bookmakers, it undoubtedly affords the same convenience to betters. The fact that appellant had such a Digest upon his person when there was another one in the room rented by Horwitz would rather indicate that he was acting independently of the operations conducted by the bookmaking establishment.

''Occupancy'' is defined by Funk and Wagnalls Standard Dictionary as ''the act of occupying; a taking possession.'' The same dictionary defines ''occupy'' as follows: ''To use or employ in an exclusive manner; to take and hold possession of; inhabit.'' The evidence in the instant case clearly shows that Horwitz had rented the apartment; that his clothing and

personal effects were at the apartment; that his conduct in the apartment was of a proprietary character in the use of such premises, while as to appellant none of the paraphernalia found in the apartment tended in any manner reasonably to connect him with the occupancy of the apartment in question. As heretofore pointed out, none of the telephone calls received at the apartment concerned appellant, and none of the betting paraphernalia found in the apartment bore his handwriting.

Respondent places great reliance upon the case of *People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778], asserting that the instant case is "strikingly suggestive of the Newland case"; that "the general pattern running through these two cases is almost identical." The only similarity we can find in the two cases is that in both of them the defendant stated to the officers that he was a visitor at the place in question. However, we do find in the Newland case facts and circumstances absent in the case at bar, and from which a reasonable inference could be drawn of the defendant's guilt. For instance, in the Newland case, the defendant had upon his person a key to the premises, and, when originally accused by the officers, he fled and made his escape, returning later to the apartment, at which time he was taken into custody.

In the case of *People* v. *Kabakoff*, 45 Cal.App.2d 170 [113 P.2d 760], also relied upon by respondent, we find the evidence revealed that the defendant was the only person found in the apartment and there was no evidence, as there is in the instant case, that any other person was the occupant of the premises, had rented the apartment, or had clothing or other personal effects therein. In the cited case, the defendant himself testified that he had occupied the apartment for two weeks prior to the date of his arrest; that it was his residence; that he slept there and was present therein every day during such two weeks time. As stated by the court in the Kabakoff case, at page 172:

"The narrative above recited establishes conclusively that appellant occupied an apartment containing: two telephones with different numbers and racing paraphernalia used by bookmakers. He had occupied the apartment every day for two weeks, was found alone and at that very time telephones were in use by outside parties who attempted to make bets. It was 2 o'clock in the afternoon when it is commonly known that races are being run, as emphasized by the experience of Officer

Barry in answering the telephones during the brief space of time in which he was in the apartment.''

In the instant case, we are impressed that, not only are the facts insufficient to warrant a reasonable inference of guilt, but that the evidence as a whole shows by a preponderance thereof that one Horwitz, who was not made a defendant, was the one who rented the apartment, occupied it, and by his conduct manifested a proprietary control over not only the apartment but the racing paraphernalia allegedly used upon the premises for the registration and recordation of bets.

To sustain the conviction of this appellant, we would be compelled to completely emasculate the doctrine of reasonable doubt and the presumption of innocence and to absolutely ignore the salutary rule of law which imposes upon the prosecution the duty and responsibility of proving the accused guilty of the offense charged against him beyond a reasonable doubt.

For the foregoing reasons, the judgment and the order denying appellant's motion for a new trial are, and each is, reversed and the cause remanded.

York, P. J., concurred.

DORAN, J.—I concur but, in doing so, I do not wish it understood that I am affirming the validity of the evidence of telephone conversations referred to in the opinion. In my judgment the evidence of such conversations was hearsay.