[Crim. No. 5742. Second Dist., Div. One. Mar. 12, 1957.]

THE PEOPLE, Respondent, v. EMIL HUDAK, Appellant.

John H. Marshall for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the District Attorney of Los Angeles County, defendant was charged in three counts with violations of Penal Code, section 337a. Count I alleged a violation of subdivision 1 of the foregoing statute in that defendant was engaged· in "pool selling and bookmaking." Count II alleged a violation of subdivision 2 in that defendant kept and occupied an apartment for the purpose of recording and registering bets. In Count III defendant was accused of a violation of subdivision 4 in that

he recorded and registered bets. The information also alleged a prior conviction of the crime of receiving stolen property, a felony.

Following the entry of not guilty pleas as to each count and denial of the prior conviction, the cause proceeded to trial before the court sitting without a jury resulting in the conviction of defendant on Count II, and his acquittal on Counts I and III. The allegation of a prior conviction was found to be true. Defendant's motion for a new trial was denied, proceedings were suspended, and defendant granted conditional probation. From the judgment of conviction and the order denying his motion for a new trial defendant prosecutes this appeal.

We regard the following as a fair epitome of the factual background surrounding this prosecution. On the afternoon of February 18, 1956, at approximately 2 o'clock, Bruce Keesling, a deputy sheriff of Los Angeles County, attached to the vice detail, engaged in a telephone conversation with a person whom he had previously seen and talked to, but who was not a paid informer nor someone pursuant to whose previous conversations the deputy sheriff had made any arrests for bookmaking. The telephone number LUdlow 91441 was received from the informer. The informer stated he knew the telephone number that one could telephone bets in to, how to telephone them in, who to pay, and how to get the payoff, and therefore, in the expressed opinion of Deputy Sheriff Keesling, he was "on the inside" with the bookmakers.

Deputy Sheriff Keesling took the telephone number LUdlow 91441 to the telephone company and "ran it through the company's records."

He and Sergeant Johnson then went to Apartment D at 3538 East 56th Street in Maywood. Deputy Sheriff Keesling used the telephone in Apartment D to dial LUdlow 91441. Deputy Sheriff Keesling had been told where the telephone answering that number was located. A male answered at the other end, saying, "Yes." Deputy Sheriff Keesling said, "This is Buck. I want five and five on Placer in the seventh at Santa Anita." The person at the other end of the telephone said, "Is that all you've got?" and the deputy sheriff said, "Yes," and hung up.

After he hung up the telephone, Deputy Sheriff Keesling and Sergeant Johnson went to the door of Apartment E at the same address. Sergeant Johnson said, "This is the Sheriff's office, you are under arrest for bookmaking. Open the door."

The door was not opened. After about one minute of waiting, the officers entered by breaking down the door. As they entered the door, they saw the defendant standing at the stove in the kitchen. A gas burner was going and a National Daily Reporter and a long piece of white paper were burning on top of the burner.

Deputy Sheriff Keesling found a telephone with the number LUdlow 91441 in Apartment E. In his opinion, he had heard the defendant's voice two or three minutes before they entered the apartment, when he made the telephone call to LUdlow 91441.

Deputy Sheriff Keesling had a conversation with the defendant on the premises at that time. He asked defendant how much he was taking in every day, and the latter said that it was between six and seven hundred dollars. The deputy sheriff asked if the betting markers were in his handwriting, and the defendant said that they were. When the deputy sheriff asked the defendant who he worked for, the latter said that he did not know the person's name, but that this person paid him $75 a week and brought him to and from that location. Deputy Sheriff Keesling also asked him what the last wager was that he had received over the telephone, and the defendant said that he believed it was a five and five dollar bet on Placer. When the deputy sheriff asked him where he had written that down, the defendant said it had probably burned off.

Following a stipulation that Officer Keesling "was an expert in matters pertaining to bookmaking and bookmaking paraphernalia," the latter testified that he examined the notations on the long piece of white paper which had been burning on the stove and that they represented wagers on horses racing at Santa Anita racetrack on the day here in question. Officer Keesling was the sole witness for the prosecution and defendant offered no testimony in his own behalf.

As his first ground for reversal appellant urges that the National Daily Reporter and the slip of white paper which were first seen by the officers burning on top of the stove in the apartment where he was arrested were obtained by an unlawful search and seizure and therefore, were inadmissible in evidence. Appellant earnestly argues that prior to entering his apartment the officers did not have sufficient information to give them reasonable cause to believe that he was committing a felony in the apartment or had committed a felony therein.

There is now a substantial agreement in the decisions of the courts as to what constitutes probable cause or reasonable cause such as will justify an officer in arresting or prosecuting a person upon a criminal charge. Appellant concedes that as clear and comprehensive a statement of the rule as can be found is that enunciated in *People* v. *Kilvington,* 104 Cal. 86, 92 [37 P. 799, 43 Am.St.Rep. 73], wherein it is stated that there must exist such a state of facts, "as would lead a man of ordinary care and prudence to believe, or entertain an honest and strong suspicion that the person is guilty." Weighed in the crucible of this rule, we are persuaded that under the facts of this case it must be held that the officers had reasonable cause to believe that appellant was committing a felony. It is now settled law that although information provided by an anonymous informant is relevant on the issue of reasonable cause, nevertheless, in the absence of some pressing emergency, an arrest may not be based solely on such information (*Willson* v. *Superior Court,* 46 Cal.2d 291, 294 [294 P.2d 36]). We are, however, satisfied that under the facts and circumstances here present, the court was justified in its conclusion that reliance on the information was reasonable (*People* v. *Boyles,* 45 Cal. 2d 652, 656 [290 P.2d 535]). We have herein narrated in detail the facts and circumstances upon which the officers acted and it is unnecessary to here repeat them. Suffice it to say that the receipt of the telephone number, checking it through the telephone company, the call placed by dialing the number in question, the conversation had when the call was answered, together with other circumstances set forth in the above evidentiary narrative, all point to the logical conclusion that Officer Keesling had sufficient grounds for reasonably believing that the apartment occupied by appellant was a bookmaking establishment. (*People* v. *Brown,* 147 Cal.App.2d 352, 356 [305 P.2d 126].) It therefore follows that the forcible entry into the apartment after demand for admittance and refusal was not unlawful (*People* v. *Miller,* 143 Cal.App.2d 558, 560-561 [299 P.2d 1010]; Pen. Code, § 836, subd. 3).

After having effected what we have concluded was a lawful entry to the apartment to make the arrest of the person therein, the officers observed appellant standing alongside the stove in the kitchen. A gas burner was lighted and a National Daily Reporter and a long piece of white paper were burning on top of it. The officers were not required

to blind themselves to what was in plain sight and certainly it cannot be said that in the instant case they conducted a search to unearth the foregoing articles which were readily visible and accessible to the officers (*People* v. *Roberts,* 47 Cal.2d 374, 379 [303 P.2d 721]). Under the circumstances here present, we are satisfied the court did not err in admitting the National Daily Reporter and the white paper into evidence.

Finally, appellant challenges the sufficiency of the evidence to support the finding that he did "keep and occupy an apartment" in violation of Penal Code, section 337a, subdivision 2. Appellant urges that "There has been no effort here to show defendant rented the apartment, how long he remained in the apartment on the date of arrest or any other date, nor that any of the furniture, clothing or telephone belonged to the defendant. No attempt was made to inquire of the manager or owner of the premises who rented the same, paid rent or was seen in the establishment."

When consideration is given to the evidentiary features of this case, including as they do the conversation between Officer Keesling when he dialed LUdlow 91441 on the telephone, the presence of the National Daily Reporter and the piece of white paper with notations thereon representing wagers on horses running on the date here in question, the further conversation with appellant after his arrest concerning the betting markers being in his handwriting, that he was receiving $75 per week from his employer who took him daily to and from his place of operations, we are persuaded that the conclusion of the trial judge that appellant occupied a place with papers and paraphernalia for the purpose of registering bets was justified. (*People* v. *Barnhart,* 66 Cal. App.2d 714, 721 [153 P.2d 214] ; *People* v. *Newman,* 24 Cal.2d 168, 174 [148 P.2d 4, 152 A.L.R. 365].)

We have examined the cases of *People* v. *Rabalete,* 28 Cal. App.2d 480 [82 P.2d 707] ; *People* v. *King,* 111 Cal.App.2d 201 [244 P.2d 20], and *People* v. *Simon,* 66 Cal.App.2d 860 [153 P.2d 420], relied upon by appellant. However, we find the factual situation involved in these cases easily distinguishable from the facts presented in the case at bar.

The judgment and the order denying defendant's motion for a new trial are and each is affirmed.

Doran, J., and Fourt, J., concurred.