[Crim. No. 6070.    Second Dist., Div. Three.    May 16, 1958.]

THE PEOPLE, Respondent, v. HELEN FLORENCE
PRESTON, Appellant.

Virgil V. Becker for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was convicted, in a non-jury trial, of violating subdivision 2 of section 337a of the Penal Code (occupying an apartment with paraphernalia for the purpose of recording bets on horse races) and was convicted of violating subdivision 4 of said section (recording bets on horse races). Proceedings were suspended and probation was granted. Defendant appeals from "the judgment" and the order denying her motion for a new trial. Since proceedings were suspended and judgment was not pronounced, it will be assumed that "the judgment" referred to in the notice of appeal is the order granting probation.

Appellant contends: (1) the search of her home and the seizure of articles therein were unlawful and that the articles so taken should not have been received in evidence; (2) the evidence was insufficient to justify the conviction; and (3) the

court erred in sustaining an objection to testimony of appellant purporting to explain the meaning of writing which was on certain pieces of paper (People's Exhibit 2).

On March 13, 1957, about 4 p. m., five police officers went to the vicinity of 215 West Opp Street in Los Angeles for the purpose of making an investigation at that address. Officer Schubach had received information regarding that place, about two weeks previously, from a confidential informer. He had received information, in the past, from that informer and the information had been reliable.

Officer Schubach testified that he went to a street corner, one block from said address, and after receiving a prearranged signal from Officer Sawyer, he went to a telephone booth at that corner and called telephone number Terminal 5-4961; the number had been given to him by the informer, and he (officer) had checked the number through the intelligence division of the police department; the number was registered to Mrs. Frankie Preston, 215 West Opp Street; a woman's voice answered the telephone call; the officer said, "Banker Vic in the seventh, Allman in the eighth, two and two parlay"; the voice said, "Who for?"; the officer said, "Chuck for Bob"; the voice said, "O. K."; after making that call, the officer signaled Officer Sawyer, who signaled Officer Jameson; then Officer Schubach (witness) went to said address and at that time Officers Jameson and Gendreau were in the house.

Officer Gendreau testified that while he was standing outside the front door of said address he received a signal from Officer Jameson, and then he (witness) knocked on the door and stated, "I am a police officer. You are under arrest for bookmaking. Open the door."; after standing a few moments and receiving no response, he forced entry into the house; upon entering the house he noticed a strong odor of smoke and he heard the toilet being flushed in the washroom; he banged on the door of the washroom, and receiving no response he forced the door open; he saw defendant in the washroom; there was a very strong odor of smoke in that room; he saw a telephone on the floor, about the center of the living room, and about 15 feet from the washroom; the number of the telephone was Terminal 5-4961; the telephone cord had been cut at the base of the telephone; scissors were on the floor next to the telephone; he took the base off the telephone and spliced the cord, and then about nine calls were received in the next 10 minutes; defendant was the only person in the apartment when he entered; he asked her (in the presence of

Officers Jameson and Schubach) who cut the telephone line; she said that her grandson had cut it that morning (the grandson was about 16 months old); later she said that playmates of the grandson had cut it; she said she did not know the names of the playmates, or their ages, or whether they were boys or girls; before entering the apartment, he (witness) had the house under observation about 10 minutes, and he did not see anyone enter or leave the apartment during that time but he did hear the telephone ring twice—the last ring was about 50 seconds before he entered; there was only one entrance to the apartment; he found two scratch pads (about 3 inches by 5 inches in size—Exhibit 5) on a card table in the living room; he found six other similar pads (Exhibit 6) in a drawer of a desk; he found seven scratch sheets, with writing on them (Exhibit 2), in a file box in a desk which was near the living room.

Exhibit 1 is a blank scratch sheet which was the top sheet of a pad that was on the card table. There was certain imprints (pencil or pen impressions) on that exhibit. Photographs of those impressions were made and were received in evidence as Exhibits 4, 7, and 8. The photographs show that the marks or impressions on the paper (toward the top) were: "62" "10" and "XX"; and (below those marks) were "75" "22" "85" and "Chuck."

Exhibit 3 is a National Daily Reporter scratch sheet, dated March 13, 1957. That exhibit was not found in the apartment —the officers had it before the arrest.

Officer Gendreau, who was an expert in bookmaking, testified further that in his opinion the figures on Exhibit 4 (one of the photographs) indicate the names of horses in a race, the bet that was made, and the name of the bettor, Chuck; that after referring to the National Daily Reporter, he was of the opinion that the figures "62" indicate the name of a horse, "Bart's Rock," running in the 6th race, in second position, at Bay Meadows, on that day; the figure "75" indicate the name of a horse, "Banker Vic," in the 7th race, in fifth position; the figures "22," across from the "75," indicate a bet of two to win and two to place; the figures "85" indicate the name of a horse, "Allman," in the 8th race, in fifth position. He testified further that the figures "75 22," with "85" below those figures, indicate that there was a parlay. He also testified that in his opinion the seven scratch sheets with writing on them (Exhibit 2) were owe sheets.

Defendant testified that when the officers entered the apart-

ment she was in the bathroom and was talking on the telephone, and she had been talking on the telephone about five minutes; the officers accused her of cutting the telephone; she said she did not cut it and that it was working when they came in; the officers broke the bathroom door; she did not recognize Exhibit 1 (the scratch sheet with impressions on it) ; her handwriting was not on any of the scratch pads; prior to the arrival of the officers she did not receive a telephone call from a person by the name of Chuck or from anyone who purported to make a bet or wager with her; she was not engaged in bookmaking or accepting wagers; when the officers came in she was not burning anything, but she was smoking; she does not print when she makes notations, but she writes. On cross-examination she testified that the telephone was not in the living room when the officers came in; her scissors were on the floor in the living room; she did not see that the telephone cord was cut when the officers picked up the telephone; the cord was about 25 feet long; there was only one telephone in the apartment; she was talking on the telephone to her daughter when the officers came in; she printed notations in a certain book (which was exhibited to her), but she printed the notations therein because her knitting teacher told her to print them; she did not tell the officers that her grandchild or that other children cut the cord, but she said the other children broke the telephone (broke a part of the receiver).

Appellant's daughter testified that she lived in the same apartment building in which the appellant lived; on said March 13, about 4 p. m., she was having a telephone conversation with appellant and, after the conversation had continued about 5 or 10 minutes, it was cut off; Officer Schubach came to the apartment of the witness and used her telephone and told her not to call her mother's telephone number; he did not tell her that she was jamming the telephone in her mother's apartment.

Officer Schubach testified, on rebuttal, to the effect that when he went to the apartment of the daughter the telephone receiver was off the hook and was lying beside the telephone; he told the daughter that she was jamming the telephone in her mother's apartment and that she should leave the receiver on the hook and stop dialing the number of her mother's telephone.

As above stated, appellant contends that the search of the apartment and the seizure of articles therein were unlawful

and that the articles so taken were not admissible in evidence. Her argument is that the officers did not have sufficient grounds to justify them in entering the apartment without a warrant. █ A peace officer may, without a warrant, arrest a person when a felony has been committed and the officer has reasonable cause for believing the person arrested to have committed it. (Pen. Code, § 836.) █ "Probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused." (*Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 183 [281 P.2d 250].) █ A violation of section 337a of the Penal Code is a felony. In *People* v. *Hudak,* 149 Cal.App.2d 88 [307 P.2d 942], a deputy sheriff received information from an informer regarding the defendant therein and also received from him the telephone number of the defendant. The deputy therein, after checking the number with the telephone company went with another deputy sheriff to an apartment, near defendant's apartment, and called the telephone number and placed a bet with the man who answered the call. Then those deputies went to the door of defendant's apartment, and one of the deputies said, "This is the Sheriff's office, you are under arrest for book-making. Open the door." The door was not opened and, after waiting about a minute, the officers entered by breaking the door. It was held therein (p. 92) that there was probable cause and that the entry was not unlawful. █ In the present case there was probable cause to justify the officers in entering the apartment. The arrest was not unlawful. █ The search of the apartment was an incident to a lawful arrest. The articles obtained as a result of the search were admissible in evidence.

Appellant contends further that the evidence was insufficient to justify the conviction. █ Consciousness of guilt could be inferred from the conflicting statements of defendant. The trial judge said that he did not believe the defendant. The evidence we have stated was sufficient to support the conviction.

█ Appellant contends further that the court erred in sustaining an objection to certain testimony offered by her. Her attorney showed Exhibit 2 (seven pieces of paper with figures and names on them) to her and asked what they were. She said they were "I. O. U." papers for money borrowed from her husband at his bar. The answer was stricken out on the ground that it was hearsay. Her attorney asked

her if she saw anyone write on those papers. She replied, "No." Her attorney asked if she had seen similar papers made. The deputy district attorney objected to the question on the ground that it was immaterial. The objection was sustained. Appellant argues to the effect that she was entitled to explain the "character and purpose of these papers," and that since she had worked with her husband in his bar she was a qualified witness to identify the papers as records made in the ordinary course of business at the bar. According to her testimony, she did not see anyone write on the papers. Also, there was no testimony by anyone as to the method of recording acts or events in the regular course of business at the bar. In ruling upon the objection the judge stated: "You would have to have somebody to testify as to how these papers were made . . . ." The court did not err in sustaining the objection, or in striking out the answer.

█ Appellant asserts further that the court abused its discretion in denying her motion for a new trial. She states that one purpose in asking for a new trial was to get an opportunity to introduce competent evidence to explain the papers, known as Exhibit 2. There was no request, during the trial, for a continuance in order to obtain other testimony regarding those papers. Furthermore, at the hearing of the motion, counsel for defendant said (with reference to Exhibit 2) that he "wasn't able to get in touch with the other people." The court did not err in denying the motion.

The judgment and the order denying the motion for a new trial are affirmed.

Shinn, P. J., and Vallée, J., concurred.