[Crim. No. 5750. Second Dist., Div. Two. Mar. 1, 1957.]

THE PEOPLE, Respondent, v. ISADORE STEINBERG, Appellant.

Ernest L. Graves for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

MOORE, P. J.—Convicted of having occupied a residence with books, papers, apparatus and paraphernalia for the purpose of selling and registering bets on horse races (Pen. Code, § 337a, subd. 2), defendant appeals from the judgment and from the order denying his motion for a new trial on the grounds that (1) the court admitted evidence obtained as a result of illegal search of private premises and (2) that there was no reasonable cause for making the search, over the objections of appellant.

During a period of two weeks after January 21, 1956, Officer Norris, a member of the vice squad of the Hollywood Division of the Los Angeles Police Department, was advised by a private, confidential informant that appellant was currently engaged in bookmaking. The officer had in the past received information from the same informant on many occasions and in each instance it was found to be dependable. The informant was not a member of any law-enforcing agency. But on the occasion in January he told Officer Norris that appellant daily, after leaving his residence about 9 a. m., visited a telephone spot at some point in the Wilshire Division area; that the number of the telephone had a Dunkirk prefix; that appellant took bets from his own bettors over the

Dunkirk telephone, but that such bets did not exceed $20 across the board; that appellant had been alerted to the likelihood that the police were in pursuit of him and that he had provided against such pursuit. Officer Norris acquainted Officer Kubiak with such information and admonished Kubiak that appellant would attempt to destroy any evidence "at the phone spot, like flushing it down the toilet as he had done in the past."

Kubiak saw appellant leave his home February 7 but lost sight of him. On February 8 he trailed appellant but again lost view of him after the latter left his automobile at Ninth and Oxford. But on February 9, about 9:30 a. m., the officer observed his prey enter the rear of the building numbered 820 South Oxford in Los Angeles. It is a rooming house with entrances on a side and at the front and rear. Kubiak absented himself for a while and at 11:30 a. m. returned with Officer Smith to the situs of his earlier observations on a parking lot north of the rooming home. From that point he saw appellant in plain view sitting at a table four feet from the window, talking into a telephone. Kubiak then by telephone requested Officers Norris and Johnson with Sergeant Riley to come to the vacant lot. Then, aided by a pair of field glasses, Kubiak again clearly saw appellant talking on the telephone in his same upstairs room. He thereupon hastily ascended the rear stairs to the second floor and cried out: "Police officers." At that instant through the glass door he saw appellant rise from the desk by which he was sitting with some papers in his hand and move speedily away. On observing such movement, Kubiak forced entrance. When he reached the inside, appellant rapidly walked toward the restroom, dropped pieces of torn paper in the commode and flushed it. The papers were retrieved by the officer who placed appellant under arrest.

As an expert on bookmaking, Kubiak determined that he was in the lair of a bookmaker. It contained all the equipment and accoutrement commonly found in the rendezvous of the bookmaker: papers, pencils, scratch sheets, daily racing forms, pieces of paper on which bets can be recorded, and telephones. In the room where appellant had been seen engaged in his operations, the telephone was on his desk on which lay the National Daily Reporter and nearby were racing forms, pencils and ball point pens. Also, the officer found there papers containing names and numbers. In the opinion of Officer Kubiak, the slips of paper contained wagers on horses

running that day at various tracks in the United States. One sheet of paper was an "owe sheet" on which was a record of the moneys owed by the bettors to the bookmaker, or the sum due from the latter to the bettors.

Appellant, in reply to questions by the officer stated that he had been in the "820" house for two days; that it was obvious to the officer why appellant tried to flush the betting markers down the toilet; that Exhibit 5* was in his handwriting but its figures were just bets of his own; that "there is nothing I can say. You've got me dead bang so why should I answer a lot of questions." He stated that the key Kubiak had taken from him was the key to the front door. The officer took an exemplar of appellant's writing. Found, also, on the desk was a sheet (Exhibit 6) with a record of wagers on horses at various tracks. Such record was in appellant's writing.

To make the proof complete, Kubiak answered incoming calls on the telephone. One unidentified man's voice announced that he was "Jack" and inquired as to his account. Kubiak answered, "You're out completely." But the party with a persistent confidence in appellant moaned and replied, "Give me two across on Marcliff in the fourth." It was proved that such communication from "Jack" was an attempt to place a bet of $2.00 to win, $2.00 to place, and $2.00 to show on Marcliff, a horse running in the fourth race at Santa Anita on February 9.

It is contended that the court erred in allowing evidence obtained as the result of an allegedly illegal search of private premises and seizure of such proofs. (*People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905].) Respondent contends that the search and seizure were an incident to a lawful arrest and therefore legal. We thus have another appeal planted in the Cahan decision. ■ But it is doomed to failure because when a police officer has reasonable cause to believe that a suspected person has committed a felony, the officer is authorized to make an arrest of the suspect and also make a search of the latter's premises and to seize such evidences of the alleged crime as may there be found. (Pen. Code, § 836, subds. 1, 3 and 4; *People* v. *Simon,* 45 Cal.2d 645, 648 [290 P.2d 531]; *People* v. *Soto,* 144 Cal.App.2d 294, 298 [301 P.2d 45]; *People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535];

---

*Exhibit 5 was the remains of two seven-by-ten-inch pieces of foolscap which he had torn in pieces and put in the toilet. They show names blocked above lists of names followed by amounts.

*People* v. *Montes,* 146 Cal.App.2d 530, 532-533 [303 P.2d 1064] ; *People* v. *Gonzales,* 141 Cal.App.2d 604, 606 [297 P.2d 50].) ▮ Appellant had the misfortune to commit his crime in the presence of the officer. While standing on the vacant lot adjoining appellant's premises, Officer Kubiak observed appellant through the latter's window performing acts commonly done by a bookmaker, which was the character given appellant by Kubiak's informant. When the officer proceeded to appellant's door, he again observed his activities through the glass door. Convinced of appellant's criminal activities, the officer entered the door forcibly. He witnessed appellant leave his desk and hasten to the bathroom where he cast the papers into the toilet bowl. Kubiak retrieved the torn papers and arrested appellant. There was no longer any doubt in Kubiak's mind of appellant's guilt. Not only had he attempted to do away with evidence of his offense, but there was the room with all necessary equipment for the operation of a bookmaker.

Prompt action by the officer in recovering a part of the evidence and in placing the culprit under arrest was justified by the necessity of having all available proofs before the court as well as the appellant himself. (*People* v. *Moore,* 140 Cal. App.2d 870, 873 [295 P.2d 969].) Having witnessed the commission of the felony, it was Kubiak's duty to make the arrest of the felon. (Pen. Code, § 836, subd. 1.) An officer's delay to enter promptly the premises where a felony is being committed may enable the accused to destroy or secrete the evidence of his crime. (*People* v. *Maddox,* 46 Cal.2d 301, 305 [294 P.2d 6].)

The Maddox case is an accurate parallel to that at bar. The officer there had had the defendant's home under surveillance for about a month and had seen narcotic addicts frequent it. He arrested the suspect. It was, at the trial, contended that the arrest was illegal because the officer did not demand admittance as required by Penal Code, section 844, even though he had reasonable grounds for his act. The court held that because the officer had reasonable grounds for the arrest, his compliance with the requirements of section 844 would have delayed his entry "and cases might arise in which the delay would permit destruction or secretion of evidence so that what the search turns up would depend on the officer's compliance with the section . . . When, as in this case, he has reasonable grounds to believe a felony is being committed and hears retreating footsteps, the conclusion that

his peril would be increased or that the felon would escape if he demanded entrance and explained his purpose is not unreasonable.'' (*People* v. *Maddox, supra,* pp. 305-306.) Inasmuch as the officer had seen appellant doing acts that conformed with the information of his informant, it was his duty to invade the premises and arrest the accused. ▮ Having no evidence to the contrary, the officer is presumed to have acted legally. (*Ibid.,* p. 304.) ▮ No good reason appears for strict compliance with section 844 to protect basic constitutional guaranties. (*Ibid.,* p. 306.) ''We conclude therefore that when there is reasonable cause to make an arrest and search and the facts known to him before his entry are not inconsistent with a good faith belief on the part of the officer that compliance with section 844 is excused, his failure to comply with the formal requirements of that section does not justify the exclusion of the evidence he obtains.'' (*Ibid.,* p. 306-307.)

▮ Appellant contends that inasmuch as reasonable cause must be shown to exist at a time prior to the arrest and prior to the forced entry and inasmuch as the information received from the ''confidential informer'' would have been insufficient upon which to secure a warrant from a magistrate, no reasonable cause existed for the arrest. In other words, he argues that the information given by the informer to Officer Norris was insufficient to constitute reasonable cause to believe that appellant was guilty of a felony, citing *Willson* v. *Superior Court,* 46 Cal.2d 291, 294 [294 P.2d 36]. But the cited case is a complete answer to his contention. There the Chief of Police of San Diego received information of bookmaking from a man unknown to him which he passed on to his officers. The Supreme Court held that while such information by an anonymous informer is relevant on the issue of reasonable cause, an arrest may not be based solely upon such information and evidence must be presented to justify the conclusion that reliance on the information was reasonable. In the Willson case, the court concluded that observations made of the defendant by the officer prior to the arrest were sufficient to justify reliance on the information. So it is here. The observation of appellant through the window and the window of the door, taken in connection with the facts reported by the informant, were enough to justify reliance on the information given by such confidential informer. Here the informer was well known to the police and had been found to be reliable on previous occasions. ▮ In the case at bar the informa-

tion given by a reliable informant, coupled with the observations of the officers, abundantly justified the forcible entry and arrest of appellant.

Since appellant's arrest was justified, the seizure of all available evidences of his bookmaking pursuits in his office was not a violation of the Cahan rule. (*People* v. *Brown,* 45 Cal.2d 640, 643 [290 P.2d 528].) Not only had the officer reasonable grounds for believing a felony had been committed but prior to his entry he had seen appellant doing acts usually done by a bookmaker. But he now contends that no "reasonable cause" was shown for the seizure of the papers in his office. Why should a concrete wall 10 feet thick and a mile high be interposed between an accused felon and proof of his crime? ▉▉▉ To warrant a search of the house of one so accused, the officer who makes an entry needs to be possessed of only such knowledge of the suspect as would lead a person of ordinary caution or prudence to suspect and conscientiously to believe the defendant guilty. (*People* v. *Smith,* 141 Cal. App.2d 399, 403 [296 P.2d 913].) Not only did Officer Kubiak have the benefit of the experience and judgment of his fellow officer who had dealt with Steinberg on prior occasions, but after having pursued that gentleman to the castle of his dreams, he witnessed the actual performance of the felony. Where such crime was done in the very presence of the officer, the latter could not escape his duty to arrest the accused pursuant to Penal Code, section 836.

The judgment and the order denying the motion for a new trial are affirmed.

Fox, J., and Ashburn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 30, 1957. Traynor, J., and Schauer, J., were of the opinion that the petition should be granted.