[Crim. No. 5831. Second Dist., Div. One. July 16, 1957.]

THE PEOPLE, Appellant, v. ESME MAXINE BRADLEY, Respondent.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Appellant.

Forno & Umann, Joseph T. Forno, Harry M. Umann and Burton Marks for Respondent.

WHITE, P. J.—The district attorney of Los Angeles County filed an information wherein defendant was charged with violations of subsections 1, 2, 3 and 4 of section 337a of the Penal Code in that on or about August 28, 1956, she engaged in bookmaking; occupied premises for the purpose of bookmaking, receiving and pretending to receive a bet, and recording and registering bets.

Upon her arraignment defendant moved the court to set aside the information pursuant to section 995 of the Penal Code. The motion was granted and defendant discharged. From the order setting aside the information the People prosecute this appeal.

The record reflects that at the preliminary examination evidence was presented to the committing magistrate that about 4 o'clock on the afternoon of August 28, 1956, defendant was arrested by Deputy Sheriffs Latimer and Bridges in Apartment A at 1452 West Gardena Boulevard, City of Gardena, County of Los Angeles.

Prior to the arrest, Officer Latimer placed a telephone call to FAculty 11324, which number he had previously checked to determine its location. That telephone was installed at the aforesaid address. The telephone number was received from a confidential informant and the call itself was placed from a private residence two doors away. Officer Latimer talked to a female voice at the other end of the telephone and from a later conversation with the defendant, after the arrest, was of the opinion that she was the same person to whom he had

initially talked when he called on the telephone. Latimer, after dialing the number FAculty 11324, and receiving an answer, stated, "This is Bill for Dave. I want to bet 5 and 5 in the seventh race on Yalta." The female voice said, "O. K.," and asked, "Who are you?" Latimer said, "This is Bill." The voice stated, "Yes, but who?" and Latimer replied, "This is Bill for Dave down at the Normandie Club." The voice said, "Well, you should be calling on the other number, shouldn't you?" to which he replied, "No, that is the number that Dave gave me." She then said, "Well, I don't know," and Latimer stated, "Well, I will tell you what. You take the bet today and we will get straightened out for tomorrow." She said "O.K." and that was the end of the conversation.

After the conversation, Latimer went outside to the rear of the location, knocked on a door and stated, "This is the deputy sheriffs, you are under arrest for suspicion of bookmaking." After approximately 10 seconds he knocked again and in a loud voice shouted that they were the deputy sheriffs. There was no response and force was then used on the back door. The officers went in and found the defendant seated inside the location with the telephone in her hand and a red ball-point pen in her other hand. She was sitting at the kitchen table. The officers found numerous professional type betting markers, a National Daily Reporter dated August 28, 1956, a scratch pad, numerous pencils, a telephone with the number FAculty 11324, a radio and Scotch tape in the immediate vicinity of the defendant. The National Daily Reporter dated Tuesday, August 28, was marked People's Exhibit 1 for identification. Six yellow cards held together by Scotch tape with ink notations were marked People's Exhibit 2 for identification. A stack of yellow cards similar to People's Exhibit 2, held together by a rubber band, was marked People's Exhibit 3 for identification. Latimer identified People's Exhibits 2 and 3 as having been first seen on the kitchen table at the place of the arrest on August 28th.

It was stipulated for the purposes of preliminary hearing that Latimer was an expert in bookmaking as conducted in Los Angeles County. In Latimer's opinion, People's Exhibits 2 and 3 are professional type betting markers. The National Daily Reporter (People's Exhibit 1) contains the races throughout the United States on certain days, it contains the names of the horses, the probable handicap positions, the weights and the probable odds. Latimer took certain notations from People's Exhibit 2 and explained them as meaning the following:

"There is a name Salami and directly below that there is a letter 'P.' Over the numeral '1' and to the right thereof there is a 462, and then a heavy line and then a 10." In Latimer's opinion this signified the fourth race at Del Mar Race Track, the second horse called "Penney a Peck" and the "P" directly over the numeral 1 means that the horse had placed, the numeral 10 is a $10 win wager on a horse in the fourth race at Del Mar Track. The officer had made a comparison of the notations on People's Exhibit 2 with the National Daily Reporter (People's Exhibit 1) and found on the 28th of August there was a horse named "Penney a Peck" in the fourth race at Del Mar. The officer made other comparisons with the notations on People's Exhibit 2 and in his opinion they were notations on horses running throughout the United States on the date of the arrest.

While Officer Latimer was at the location the telephone rang and the witness answered it on many occasions. At 4:15 he answered the telephone and a man's voice stated, "This is Al" and asked, "Where is the girl?" Latimer said, "She had to step out for a minute. She went down to the drug store to get some cigarettes. It is O.K. to give it to me." The voice stated, "Give me 10 to win and 10 to place on Miss Todd in the seventh race at Del Mar. Don't forget, this is for Al." At approximately 4:19 a man named Georgie called and said, "Give me in the eighth race Break the Ice, 5 to win and 5 to place and 5 to show," and he also asked, "Where is the girl?" The two names mentioned, "Miss Todd" and "Break the Ice," were listed in the National Daily Reporter on that date.

Latimer had occasion to talk with the defendant on the date of the arrest. The conversation was held at the location of the arrest. She was questioned as to what she was doing there and she stated she was working a jigsaw puzzle. She was asked her name and she said, "Max." She was asked how long she had been bookmaking there and there was no answer. She was told she had been bookmaking there for approximately seven days and there was no answer. Latimer then told her she had been taking approximately between $7,000 and $9,000 a day in bets and there was no response. She was then told that the marks on the National Daily Reporter were in her own handwriting and there was no response. She was told that the marks on these betting markers were in her handwriting and that she wrote them. There was no response.

Defendant Esme Maxine Bradley testified that the officers had forced their way into the premises and that prior to that,

about five minutes before, she had received a call from a male voice stating, ''This is Frank or Bill''; that she said ''You must have the wrong number.'' The voice said, ''No, it's all right. This is Frank, the floorman over at the Gardena Club. Bill gave me this number and told me to call it.'' She said, ''Well, you had just better have Bill give you another number'' and hung up.

She testified that the voice of Officer Latimer ''was not the same voice that had called.''

On cross-examination, the witness stated she did not know the telephone number at that location where she was arrested nor did she know to whom the telephone was registered.

The first question presented is whether there was reasonable cause for the arrest of the respondent and was the subsequent search and seizure lawful. We are satisfied that both queries must be answered in the affirmative. ■ Conceding that the information given to the officer was not of itself sufficient to establish reasonable or probable cause for the arrest, search and seizure (*Willson* v. *Superior Court,* 46 Cal.2d 291, 294 [294 P.2d 36]) nevertheless, in the instant case, the evidence presented to the court as herein set forth, as to the subsequent telephone conversation had by the officer with respondent, would justify the conclusion that reliance by the officer on the information theretofore given him was reasonable.

■ Penal Code, section 836, subdivision 1, authorizes an officer to make an arrest when a public offense is committed in his presence. This simply means that such an arrest may be made when circumstances exist that would cause a reasonable person to believe that a crime has been committed in his presence (*Coverstone* v. *Davies,* 38 Cal.2d 315, 320, 321 [239 P.2d 876]). Acting as they do as guardians of the peace and security of the community and concerned at all times with crime and criminals in a complex society, it is manifest that the utmost that can reasonably be exacted of an officer who arrests without a warrant is that upon the circumstances with which he is confronted, he would be justified in making a complaint upon which a warrant of arrest might issue. ■ In the case at bar, the officer telephoned and asked the person answering the call to place a bet on a certain race and the person replied, ''O.K.'' Under these circumstances and the inferences reasonably to be drawn therefrom can it be said that the officer was without justification in assuming that a felony was being committed and that an investigation was

reasonably warranted? (*People* v. *Martin,* 46 Cal.2d 106, 108 [293 P.2d 52].) It is a felony for any person to engage in bookmaking at any time or place, or to accept, receive or pretend to receive a bet on horse races (Pen. Code, 337a, subds. 1, 3, 6). Commission of an offense in the presence of an officer is not restricted to those cases where knowledge thereof is provided by the officer's sense of sight. Knowledge of the commission of an offense may be acquired through any of the officer's senses. In *People* v. *Bock Leung Chew,* 142 Cal.App.2d 400 [298 P.2d 118], the officer detected the odor of opium (the possession of which is denounced as a felony), coming from an apartment, the court said (p. 402)," . . . Since the possession of opium is a felony officers who detect the odor of opium are entitled to believe that the felony of possessing opium is being committed in their presence. *We can see no logical distinction in this respect* between something apparent to the sense of smell, and the same thing apparent to the sense of sight or to the sense of hearing. . . ." (Emphasis added.)

 A criminal complaint may be verified on information and belief (Pen. Code, 806). If the name of the accused is unknown, he may be charged under a fictitious name (Pen. Code, § 959), and a warrant of arrest may be issued when the defendant is designated by any name (Pen. Code, §§ 813, 815). Since the officer herein received information through his sense of hearing, that book-making was being conducted by someone, he would be justified in making a complaint upon which a warrant might issue. It necessarily follows that the arrest of respondent herein, without a warrant, upon the premises where the telephone in question was located, was justified. As was said in *People* v. *Allen,* 142 Cal.App.2d 267, 280 [298 P.2d 714]: ". . . The authors of the Bill of Rights did not suggest or imply that when law enforcement agencies have learned that a person has committed a felony, they must await the convenience of the offender before moving into his lair. . . ."

As to the second part of the question hereinbefore posed, we entertain no doubt that there was reasonable and probable cause on the part of the officer to believe that an offense was being committed; that respondent was guilty thereof, and therefore, that the arrest was justified and the search and seizure incident to such an arrest was also lawful.

 Our Supreme Court has defined reasonable cause as such a state of facts as would lead a man of ordinary care

and prudence to believe, or entertain an honest, strong suspicion, that the person in question is guilty of a crime (*People* v. *Kilvington,* 104 Cal. 86, 92 [37 P. 799, 43 Am.St.Rep. 73]).

 Probable cause has been defined as a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true (*People* v. *Brite,* 9 Cal.2d 666, 687 [72 P.2d 122] ; *Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 184 [281 P.2d 250] ; *United States* v. *Bell,* 48 F.Supp. 986; *Cook* v. *Singer Sewing Machine Co.,* 138 Cal. App. 418, 422 [32 P.2d 430] ; *Coverstone* v. *Davies, supra,* 38 Cal.2d 315 [239 P.2d 876]).

*People* v. *Miller,* 143 Cal.App.2d 558 [299 P.2d 1010], is a case closely analogous in its factual background, to the case now engaging our attention. In the case just cited, the court said (p. 560) : "The question is whether the officers had reasonable grounds for making a forcible entry of the premises without a search warrant. Appellants say the entry was not justified by information received from the intelligence unit of the sheriff's office and in this they would seem to be correct, . . . But we think appellants attach too little importance to the fact that Officer Johnson, having ascertained the telephone number of the apartment, made the inquiry and received the reply we have related. His testimony as to the conversation was not denied by appellants, and we think the discussion over the telephone strongly indicated that he was talking with a bookmaker who was ready and willing to accept a bet. No other explanation has been suggested by appellants and we can think of none. The information Johnson received over the telephone was the equivalent of an offer to accept a bet if he wished to place one. We think there is no reason to doubt that the officer had sufficient grounds for suspecting, and even for believing, that the apartment occupied by appellants was maintained as a bookmaking establishment. Under the authorities, which it is unnecessary to review, the forcible entry of the premises after demand for admittance and refusal was not unlawful. Circumstances considerably less incriminating than those of the present case have been held sufficient to furnish reasonable grounds for an arrest and search. . . ." (See also *People* v. *King,* 140 Cal.App.2d 1, 6 [294 P.2d 972].)

 The following language used by this court in *People* v. *Hudak,* 149 Cal.App.2d 88, 92 [307 P.2d 942], is peculiarly applicable to the case at bar: "We have herein narrated in detail the facts and circumstances upon which the officers acted and it is unnecessary to here repeat them.

Suffice it to say that the receipt of the telephone number, checking it through the telephone company, the call placed by dialing the number in question, the conversation had when the call was answered, together with other circumstances set forth in the above evidentiary narrative, all point to the logical conclusion that Officer Keesling had sufficient grounds for reasonably believing that the apartment occupied by appellant was a bookmaking establishment. (*People* v. *Brown,* 147 Cal.App.2d 352, 356-357 [305 P.2d 126].) It therefore follows that the forcible entry into the apartment after demand for admittance and refusal was not unlawful. (Citations.) ''

Respondent herein does not dispute the accuracy of the factual statement presented herein, but her main contention appears to be that the evidence at the preliminary examination presented a direct conflict in regard to the telephone call made by the officer and with reference to the identity of the voice heard on the telephone. That therefore, the court below was justifid in setting aside the information pursuant to section 995 of the Penal Code.

 The rule defining the function of the trial court when confronted with a motion to set aside an information under the section just cited, was thus enunciated in *People* v. *Jackson,* 146 Cal.App.2d 553, 556 [303 P.2d 767] : ''. . . It is the record before the magistrate that is decisive. In arriving at his decision the magistrate may weigh the evidence, may resolve conflicts, and may give or withhold credence to witnesses. In testing the sufficency of the showing made before him on motion to quash the superior court cannot do these things. (Citing cases.) '' In *People* v. *Flanders,* 140 Cal.App.2d 765, 768 [296 P.2d 13], it is stated: '' '. . . On a motion to set aside an information, the court may not substitute its judgment as to the weight of the evidence for that of the magistrate conducting the preliminary examination. On such motion the court will not inquire into the sufficiency of the evidence if there is some evidence in support of the information.' ''

 The foregoing is a complete answer to respondent's contention regarding conflicts in the evidence presented to the committing magistrate. The facts of the instant case clearly show not only *some* evidence, but *substantial* evidence in support of the information. That there was reasonable and probable cause to believe that respondent committed a felony is manifest from the facts herein stated. Since the trial court was

not authorized to reweigh the evidence it was error to grant respondent's motion.

Under the circumstances here under consideration, the evidence before the magistrate was sufficient to justify a reasonable conclusion that the violations of section 337a of the Penal Code as charged in the information had been committed by respondent; that the officers had reasonable cause, before the search and seizure, to believe that respondent was guilty thereof, and to arrest her. Therefore the search and seizure incident to such arrest was lawful (*People* v. *Hudak*, *supra*).

The order from which this appeal was taken is reversed.

Doran, J., and Fourt, J., concurred.