[Crim. No. 13416.   Second Dist., Div. Two.   May 8, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES ROBERT NEWELL, Defendant and Appellant.

Edward I. Gritz for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David Gould, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Defendant appeals from the judgment entered following a nonjury trial that resulted in his conviction of the crimes of possessing heroin (Health & Saf. Code, § 11500), and possessing heroin for purposes of sale (Health & Saf. Code, § 11500.5). The trial court recognized that since only one act of possession was involved, the violation of section 11500 constituted a lesser offense necessarily included within the more serious offense proscribed by section 11500.5. Therefore, the court properly refrained from imposing any sentence on account of the lesser included offense. (Cf. *People v. Miranda,* 254 Cal.App.2d 517, 523 et seq. [62 Cal.Rptr. 339] and cases cited therein.)

The sufficiency of the evidence bearing upon appellant's guilt is not challenged. ■ By way of assignment of error appellant contends only that "The admission of evidence seized from a warrantless search not incident to a lawful arrest was error and will not support the judgment of conviction." We have concluded that the trial court's determination on this issue is supported by the record herein.

■ "Reasonable or probable cause for an arrest has been the subject of much judicial scrutiny and decision. There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citations]—and on the total atmosphere of the case. [Citations.] ■ Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. [Citations.]" (*People v. Ingle,* 53 Cal.2d 407, 412 [2 Cal. Rptr. 14, 348 P.2d 577].)

■ Los Angeles County Deputy Sheriff Eldon Burkett of the Headquarters Detective Bureau, Narcotics Detail, testified that on May 12, 1966, he was advised by Mrs. Nancy Upshaw, the nonresident manager of an apartment building, that on the previous day she had gone to the apartment leased by appellant's codefendants Neal and Byerley to order them to move. When one of the tenants had opened the door she had "smelled a strong odor of marijuana from within." She was familiar with the characteristics of this substance and "she had no doubt that what she smelled was marijuana."

Although Mrs. Upshaw was a citizen complaining of criminal activities occurring in her presence, as distinguished from the usual police informant (cf. *People v. Lewis,* 240 Cal.App. 2d 546, 549, 550 [49 Cal.Rptr. 579]), Officer Burkett quite

reasonably determined to seek further information concerning the subject matter of her complaint before acting thereon. He first spoke with Mrs. Koble, the resident manager of the building, who described to him the large amount of foot traffic she had observed entering the apartment in question, remaining only a few minutes and then leaving. This traffic occurred both day and night and on several occasions she had observed people so deeply ''under the influence of something'' that they literally had to be carried from the location by their companions.

Still proceeding cautiously, the apartment was placed under surveillance that afternoon and evening by officers from the sheriff's department. They observed several people entering the apartment and recognized at least one of them as a person known to them as a narcotic violator. They ran record checks on two of the vehicles used by other parties not known to them personally and learned that they were registered to persons with records of narcotic violations.

Officer Burkett discussed the matter with his fellow officers and learned that one of them had seen Neal in court that very day and he had appeared to be under the influence of some drug, possibly a barbiturate. Officer Burkett also was informed by another officer that the other tenant, Byerley, was being sought by him in connection with an earlier report that he was engaged in the illegal use and sale of marijuana in the Bellflower area but that he had not been able to locate him up to that time. No objection was made to this latter item of information nor did the defense seek to determine the factual basis or source of this previous charge against Byerley. Of course, as appellant accurately observes, this undeveloped report standing *alone* would not supply a sufficient basis for entering the apartment to arrest its occupants (*People* v. *Pease,* 242 Cal.App.2d 442, 448 et seq. [51 Cal.Rptr. 448]), but such fact does not render it wholly lacking in evidentiary significance.

The surveillance of the apartment in question was resumed the following day with additional officers so posted that they could follow and observe the actions of persons leaving the premises. When one of the cotenants, Byerley, was seen to leave in a vehicle with another person, his operation thereof was so erratic and dangerous that the officers following him properly ordered him to stop. When he did so and the officers approached his car on foot, they observed him endeavoring to swallow a number of handrolled cigarettes taken from his

shirt pocket. He desisted in this effort when ordered so to do and spat out one of the cigarettes. It proved to contain marijuana. He and his companion, one Kolas, were placed under arrest and advised of their constitutional rights in accordance with the then applicable requirements enunciated in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], but lacking the refinements subsequently developed in *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R. 3d 974].

The trial court excluded testimony concerning any statements made by Byerley who was a codefendant in the instant proceeding but properly allowed receipt of the statements made by Kolas against whom no charges were filed. (Cf. *People* v. *Varnum,* 66 Cal.2d 808, 812-813 [59 Cal.Rptr. 108, 427 P.2d 772].) Kolas falsely denied that he and Byerley had come from the apartment building from which the officers had followed them and asserted that they had proceeded from another and entirely different address.

At this point it appears clear that the accumulated evidence was amply sufficient to justify the officers in concluding that both Byerley and his cotenant Neal were guilty of the crime of possessing proscribed narcotics. In addition, the attempt to mislead them as to the point of departure of Byerley's vehicle strongly indicated that at that moment additional narcotics were still present on the premises and in the illegal possession of Neal. However, even this did not constitute the complete evidence on this issue.

When the officers returned to the apartment building with Byerley and Kolas, they parked their unmarked vehicle and began walking toward the entrance of the building. As they did so they observed another vehicle park near the entrance. Two men alighted and Officer Burkett recognized both of them as persons he had previously arrested for narcotics violations. These men also walked toward the entrance of the building and as they drew closer together one of these men raised his arm in greeting. Then it "apparently dawned on him who I [Officer Burkett] was. He threw his arms up, made another statement and took off very rapidly down the other side of the street."

Officer Burkett learned from his fellow officers that the cotenant Neal apparently was then in the apartment since three other men had been observed to knock on the door and were promptly admitted by the occupant. The officers properly determined to enter and effect Neal's arrest. They entered with-

out knocking or announcing their identity, using a key which they had taken from Byerley at the time of his arrest. When the asserted lack of evidence to justify this action was argued in the court below, the trial judge aptly observed: "The evidence here is of such a nature that you can break it down and take any one element and argue that that one element does not justify a search, and quite justifiably so. The cumulative effect of all the evidence and knowledge available to the officers was such that it would be *almost impossible for any reasonable man* not to come to the conclusion that there was some narcotic activity in the apartment." (Italics added.)

It may also be noted that at this point time had become of the essence. The situation here was not that presented in *People* v. *Gastelo,* 67 Cal.2d 586, 588 [63 Cal.Rptr. 10, 432 P.2d 706], where the police in executing a search warrant made a forcible entry without complying with Penal Code section 844 and made no "specific showing" of any justification therefor. In *Gastelo* it was argued that an unannounced and forcible entry to execute a search warrant is *"always reasonable* in narcotics cases." (Italics added.) Our Supreme Court did not agree that "unannounced forcible entries may be authorized *by a blanket rule* based on the type of crime or evidence involved" but recognized that noncompliance with section 844 is permitted where "some particular reason exists" to support an officer's good faith belief that noncompliance is necessary in order to prevent the destruction of evidence. Similarly, in *People* v. *Rosales,* 68 Cal.2d 299, 305 [66 Cal.Rptr. 1, 437 P.2d 489], the court stated: "Noncompliance with section 844 may nevertheless be excused when the officer acts on a reasonable and good faith belief that compliance would increase his peril, frustrate an arrest, or *permit the destruction of evidence.* Such a belief, however, must be based *on the facts of the particular case.* It cannot be justified by a general assumption that certain classes of persons subject to arrest are more likely than others to resist arrest, attempt to escape, or destroy evidence. [Citation.]" (Italics added.)

Of course, no one possessing any knowledge of the course of conduct invariably pursued by those engaged in the illegal traffic in narcotics could possibly quarrel with the factual verity of the premise that *all* persons knowingly possessed of narcotics will attempt to dispose of the contraband as quickly as possible after they become aware that their apprehension by approaching police officers is imminent. In addition, in most instances such contraband will have been specifically

packaged and so placed as to permit of its immediate disposition or destruction. The unanimous expert opinion on this subject is buttressed by the legion of appellate decisions reporting a myriad of examples of such conduct.

Nevertheless, as we have noted, our Supreme Court, in consideration for the fundamental rights of all citizens and the dangers inherent in any unannounced entry, determined in *Gastelo* and *Rosales* that these factors alone would not justify noncompliance with section 844. However, in its more recent decision in *People* v. *De Santiago,* 71 Cal.2d 18, 28-19 [76 Cal.Rptr. 809, 453 P.2d 353], the court has clarified and refined these earlier rulings by holding that ''where officers have obtained particular information which leads them to reasonably conclude that the occupants of an apartment or residence have specifically resolved to effect disposal in the event of police intrusion or have made specific preparations in that regard (see *People* v. *Barnett* (1958) 156 Cal.App.2d 803, 805 [320 P.2d 128]; *People* v. *Steinberg* (1957) 148 Cal. App.2d 855, 857 [307 P.2d 634]), . . . an unannouunced entry may be justified.''

In the cited examples of *Barnett* and *Steinberg*, informants, in addition to advising the police that certain persons were possessed of narcotics, reported the further fact that these persons intended to dispose of the contraband if threatened with apprehension. In the instant case the police had far more to justify their actions than the mere fact that an informant had confirmed the special applicability to particular suspects of the almost universal propensity of a class of people to destroy evidence. Here the police not only knew to a virtual certainty that there was a supply of narcotics in the apartment, but in addition, it had been only a matter of minutes earlier that they had approached the cotenant Byerley and had observed him in his hasty attempt to dispose of the contraband which he necessarily had in his possession when he left the apartment. From such ''particular information'' the officers scarcely could have failed to reach the reasonable conclusion that both Neal and Byerley, as cotenanats and joint possessors of narcotics, had ''specifically resolved to effect disposal in the event of police intrusion'' (*People* v. *De Santiago,* p. 29), and ''harbored a present intention to dispose of evidence.'' (*People* v. *De Santiago,* p. ——.) In addition, in the present case the officers quite naturally feared the inherent probability that the known addicts who had fled after they had met and recognized the officers in front of the prem-

ises would promptly telephone the remaining occupants and warn them to destroy all contraband present therein.

Of course, knowledge acquired by the officers after they had entered the premises may not serve to justify retroactively the manner in which their entry had been effected. Nevertheless, the subsequent developments do demonstrate the reasonableness of the decision theretofore reached by the officers based upon the evidence of the particular exigent circumstances shown by the record to have been known to them at that time.

The moment appellant, who was in the bathroom, saw the officers, he slammed the door shut. One of the officers broke in and thereby prevented the destruction of several piles of heroin on a record album *lying across the toilet*.[1] We are convinced that the officers' alert performance of their duties was entirely justified and in the circumstances of this case their decision to effect an unannounced entry was entirely warranted. To use the language of *De Santiago* at page 29, "compliance with the applicable knock-and-notice provision is excused not because of a blanket rule based on the type of crime involved but because the particular circumstances of the case [gave] rise to a reasonable belief that immediate action [was] necessary to prevent the destruction of physical evidence."

The judgment is affirmed.

Roth, P. J., and Wright, J., concurred.

---

[1]Nearby was a razor blade, measuring spoon, some balloons, and a can of dextrose milk sugar.