[Civ. No. 1172. Fifth Dist. Sept. 29, 1970.]

JESSIE C. PATE et al., Plaintiffs and Appellants, v.
THE MUNICIPAL COURT FOR
THE MODESTO JUDICIAL DISTRICT OF STANISLAUS COUNTY,
Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

## COUNSEL

Carlos J. Badger for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

Thomas C. Lynch, Attorney General, Nelson P. Kempsky, Daniel J. Kremer and Russell L. Moore, Jr., Deputy Attorneys General, for Real Party in Interest and Respondent.

## OPINION

**GARGANO, J.**—By complaint filed in the Municipal Court for the Modesto Judicial District, appellants were charged with knowingly having in their possession and exhibiting lewd and obscene motion pictures in violation of section 311.2 of the Penal Code, a misdemeanor. Appellants moved the court to suppress the evidence and exclude the press and public from the trial. The motions were denied. Appellants then petitioned the Superior Court of Stanislaus County for a writ of mandate to compel the municipal court to suppress the evidence and to exclude the press and public from the trial.[1] The petition was denied. This appeal followed.

The essential facts are as follows: On May 10, 1967, Sergeant Sweeney of the Stanislaus County sheriff's office received a telephone call from a Merced police officer, informing him that the Merced police had received information from a reliable informant that lewd films were going to be shown that evening at the Divine Gardens Motel in Turlock; the informant had supplied the Merced police with similar information on other occasions, leading to several arrests. A short time later, Sweeney and Sergeant Curtis, also of the Stanislaus County sheriff's office, met several Merced police officers at the Turlock police station and were told that the suspects were appellants Jessie C. Pate and Edward Carl Woodard. Sweeney and Curtis then proceeded to the Divine Gardens Motel and learned that appellants and two women companions had registered in room 216, after

---

[1]Appellants' petition for writ of mandate was filed prior to the adoption and effective date of Penal Code section 1538.5 (*Flack* v. *Municipal Court,* 66 Cal.2d 981 [59 Cal.Rptr. 872, 429 P.2d 192]; *LaMar* v. *Superior Court,* 87 Cal.App.2d 126 [196 P.2d 98]). Section 1538.5 now provides for a direct appeal to the superior court from an order of the municipal court denying or granting a motion to suppress the evidence.

making a stop at a liquor store. This room is located on the second floor of the motel and has a window which overlooks a sun screen or trellis made of 2x6-inch timbers which jut outward from the side of the edifice.

A few minutes after arriving at the motel, the officers observed flickering lights emanating from behind the draperies of appellants' motel room window. Believing that the light came from a motion picture projector, Sergeant Sweeney, who with Curtis was standing in the patio on the floor below, climbed up the steps leading to the landing on the second floor, climbed over a small fence onto the trellis or sun screen and proceeded along the trellis for a considerable distance until he reached appellants' room window. The curtains were drawn, but were slightly parted at the point at which they met the window sill, leaving a 1 to 1½-inch aperture. From his vantage point on the trellis, Sweeney looked through the aperture and observed that an obscene film was being shown. He signaled Curtis who had remained stationed in the patio. Then Curtis entered appellants' room, arrested appellants and confiscated the films.

■ Appellants assert that, like a man's home, a motel room is his castle (*Stoner* v. *State of California,* 376 U.S. 483 [11 L.Ed.2d 856, 84 S.Ct. 889]; *People* v. *Rodriguez,* 242 Cal.App.2d 744 [51 Cal.Rptr. 873]), and that Sergeant Sweeney violated their right of privacy when he crawled out on the trellis and "peeked" through the accidental aperture in the draperies. They contend that the officer's clandestine observation through the motel room window constituted an unreasonable search under the rationale of *Bielicki* v. *Superior Court,* 57 Cal.2d 602 [21 Cal.Rptr. 552, 371 P.2d 288]. In that case, the California Supreme Court struck down the police practice of spying into public toilet booths to apprehend persons who used the booths for homosexual activities.

There is merit to appellants' contention. ■ The Fourth Amendment protects a person against police invasion of his right of privacy, and when the police lack either a warrant or probable cause to conduct a search, the appropriate test is "whether the person has exhibited a reasonable expectation of privacy, and, if so, whether that expectation has been violated by unreasonable governmental intrusion . . ." (*People* v. *Bradley,* 1 Cal. 3d 80, 84 [81 Cal.Rptr. 457, 460 P.2d 129].) ■ Clearly, by drawing the curtains on the window of a motel room which was located on the second floor of the building and at a considerable distance from any public vantage point, appellants exhibited a reasonable expectation of privacy. Thus, the trespass Sweeney committed when he climbed upon the ornamental trellis to look into appellant's room through the accidental aperture was an unreasonable governmental intrusion.

■ Respondent subtly concedes that Sergeant Sweeney's surreptitious

conduct was constitutionally impermissible; the cases upon which it relies for the contrary proposition involve relatively minor trespasses under circumstances indicating the defendant's indifference to public observation (*People* v. *Aguilar,* 232 Cal.App.2d 173, 177 [42 Cal.Rptr. 666]; *United States* v. *St. Clair,* 240 F.Supp. 338). Respondent earnestly argues, however, that Officer Curtis had reasonable cause to believe that a public offense was committed in his presence before Sweeney climbed out on the trellis, and that his right to enter appellants' room to arrest them was not vitiated by his fellow-officer's subsequent gymnastics. Respondent contends that the obscene films were properly seized by Curtis as an incident to a valid arrest (*People* v. *Ingle,* 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577]).

█ In this state a police officer may lawfully make a misdemeanor arrest "[w]henever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence." (*Coverstone* v. *Davies,* 38 Cal.2d 315, 321 [239 P.2d 876]; Pen. Code, § 836, subd. 1.) And, "presence" entitling an officer to make a misdemeanor arrest is not merely physical proximity but occurs when the crime is apparent to the officer's senses (*People* v. *Bradley,* 152 Cal.App.2d 527 [314 P.2d 108]; *People* v. *Steinberg,* 148 Cal.App.2d 855 [307 P.2d 634]; *People* v. *Bock Leung Chew,* 142 Cal.App.2d 400 [298 P.2d 118]). █ But, it stretches the imagination to believe that the public offense which was being committed in the privacy of the motel room was also committed in the presence of Sergeants Sweeney and Curtis who were standing in the patio on the floor below merely because they could see flickering lights emanating from behind the drawn curtains. Although the officers could see the flickering lights, they could not tell, from the use of their own senses, whether they were coming from a motion picture projector, a television screen or some other source. Furthermore, even if it were reasonable for the officers to assume that the light was caused by a motion picture projector, they had no way of knowing that lewd films were being displayed at that particular time.

In any event, Sergeant Sweeney undoubtedly climbed on the trellis for the very reason that he could not tell whether the flickering lights came from a motion picture projector or, if so, whether lewd films were being displayed at that time. In addition, Sergeant Curtis made no attempt to arrest appellants until after he received Sweeney's signal. Thus, it is manifest that in arresting appellants Curtis did not rely on what he observed from his vantage point on the patio. █ It is settled that "[i]nformation which may be available to an arresting officer, but upon which he did not rely in making an arrest cannot be used to justify the arrest" (*People* v. *Hunt,* 250 Cal.App.2d 311, 315 [58 Cal.Rptr. 385]; see also *Terry* v. *Ohio,*

392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868] and *People* v. *Gallegos,* 62 Cal.2d 176, 178 [41 Cal.Rptr. 590, 397 P.2d 174]).

The leading cases standing for the proposition that an officer may make an arrest if he has reasonable cause to believe that the person arrested has committed a misdemeanor in his presence are distinguishable. In *Bock Leung Chew* the officer could actually smell the odor of opium, and hence relied on what he had detected through the use of his own senses before he entered defendant's room. Likewise, in *Steinberg, supra,* 148 Cal.App.2d 855, the policeman observed defendant through an unobstructed window open to public view, performing acts commonly done by a bookmaker. In *Bradley, supra,* 152 Cal.App.2d 527, the officer placed a bet by telephone before he raided defendant's apartment and arrested him for bookmaking.

We note, parenthetically, that it appears from the record that Sergeant Curtis made an unannounced entry contrary to the requirements of Penal Code section 844. Appellants, however, did not raise this issue in the court below, and they are precluded from raising it in this appeal. (*People* v. *Robinson,* 62 Cal.2d 889 [44 Cal.Rptr. 762, 402 P.2d 834]; *People* v. *Nash,* 261 Cal.App.2d 216 [67 Cal.Rptr. 621].)

The judgment is reversed with directions to the trial court to issue a writ of mandate compelling the Municipal Court of the Modesto Judicial District to suppress the evidence as prayed for in appellants' petition.

Stone, P. J., and Coakley, J., concurred.