[Crim. No. 29504. Second Dist., Div. Five. Jan. 26, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD HOWARD FREEMAN, Defendant and Appellant.

---

**COUNSEL**

Goldin & Goldin, Alan Saltzman and Martha Goldin for Defendant and Appellant.

Fred Okrand, Jill Jakes and Mark D. Rosenbaum as Amici Curiae on behalf of Defendant and Appellant.

Burt Pines, City Attorney, and Peter Alan Ross, Deputy City Attorney, for Plaintiff and Respondent.

**OPINION**

**STEPHENS, J.**—This case is before us following an order certifying the matter to this court from the Appellate Department of the Superior Court, Los Angeles County.

The statement of facts consists of a stipulation:

"The parties stipulated to the following facts incorporated in the engrossed settlement statement:

" 'The officers had no search warrant or arrest warrant with respect to the defendant or the place where he was arrested.

" 'On September 17, 1975, the officers entered an adult bookstore, which has a movie arcade at the rear to "check for 647(a) suspects and juveniles inside the location." The movie arcade consists of a series of booths about the size of telephone booths. The booths are enclosed on three sides by solid walls, or partitions, and on the fourth side there is a hanging curtain over the front of the booth. The booth curtain is tacked at the top and does not slide on a rod. Only one person can use the booth at a time, both because the booth is small and because motion pictures are viewed through a small glass pane about 2 inches × 6 inches in dimension and only one face can be in front of the glass pane at a time.

" 'Photographs of the booths will be introduced. The booths are darkened to permit viewing of the motion pictures. The customer in the booth pays $0.25 for two or three minutes' viewing time.

" 'The defendant expected to be alone in the booth and did not expect somebody to walk in uninvited. He expected his privacy to be maintained. No member of the public could see the front of the defendant's body or his hands or face without opening the curtain. (His feet could be seen beneath the curtain for a few inches above the floor where the curtain does not meet the floor.) The booth was designed to let only one person use it at a time.

" 'The officers "checked" the premises by going to each booth and pushing the curtain aside to see if anything "criminal" was going on. The officers knew nothing about the defendant before they opened the curtain and had no information about him.

" 'The officers had no information as to who was in the defendant's booth before he was arrested.

" 'The officers' purpose was to check to see if they could discover anybody engaging in crime. They opened the curtains of the booth for that purpose.'

"An additional, oral stipulation was that 'sexually explicit films are displayed·in these booths.' "

We adopt substantially the opinion written by Judge Alarcon as the opinion of this court, adding thereto some minor changes and excisions.[1]

"The trial court denied the defendant's motion to suppress the observations of the arresting officer. Our task is to determine whether the evidence fails to support the trial court's decision. The trial court found that the officer's observations were made in 'a public place' and therefore no search occurred. The uncontradicted facts in this case support the trial judge's finding that the observations were made in a public place. [Our] research has not revealed any reported case involving observations made into a curtained booth at a public movie arcade. . . .

"Our Supreme Court has provided clear guidance in determining whether the place which was searched comes within the protection of the Fourth Amendment or article I, section 13 of the California Constitution.

"In *People* v. *Dumas* [1973] 9 Cal.3d 871 [109 Cal.Rptr. 304, 512 P.2d 1208] the court spelled this out in the following language at page 881:

" 'The pattern of prior decisions suggests that one of the most crucial determinants of the validity of warrantless searches is the nature of the place subjected to search. This pattern has been created by the interweaving of constitutional concepts with fundamental human needs

---

[1]That portion of the instant opinion following Judge Alarcon's views is enclosed in quotes.

and expectations. The courts have implicitly recognized that man requires some sanctuary in which his freedom to escape the intrusions of society is all but absolute. Such places have been held inviolate from warrantless search except in emergencies of overriding magnitude, such as pursuit of a fleeing felon [citation omitted] or the necessity of action for the preservation of life or property [citations omitted]. Certain other places carry with them an expectation of privacy which, although considerable, is less intense and insistent. These places may be searched upon probable cause alone under circumstances of less demanding urgency. Still other sites are regarded as so public in nature that searches are justifiable without any particular showing of cause or exigency. This hierarchy of protection arises not from the application of differing constitutional standards to various locales, but rather from an application of a single standard of reasonableness to all places in accordance with a fundamental understanding that a particular intrusion into one domain of human existence seriously threatens personal security, while the same intrusion into another domain does not.' "

"Thus, in *Dumas,* the California Supreme Court excluded from the application of the exclusionary rule 'sites so public in nature that searches are justifiable without any particular showing of cause or exigency.' (*People* v. *Dumas, supra,* at p. 882.)

"The *factual question* presented to the trial judge was whether a booth *curtained by the owner* of a movie arcade is the type of public place referred to in *Dumas* which can be searched without a warrant. ▮ It seems quite clear that those portions of the movie arcade which were used by all patrons would come within the public-place exception. The novel question presented by this appeal is whether the fact that the *owner* curtained off certain booths for the private enjoyment of sexually explicit films converts such sites into places not open to the public. While not a case involving a search and seizure question, *In re Steinke* [1969] 2 Cal.App.3d 569 [82 Cal.Rptr. 789], is quite informative on the private versus public nature of those portions of a public place which have been enclosed by the *owner* for purposes of the patron's privacy. In the *Steinke* case the petitioner was arrested on a warrant charging her with masturbating another person at a massage parlor. The petitioner contended that 'since the alleged acts took place in a closed room within the massage parlor, they were not lewd acts committed in a public place or a place open to the public or a place exposed to public view' (*Id.,* at 572). The court held in *Steinke* that 'A room within the confines of a

public massage parlor does not, while said parlor is open for business, lose its character as a "place open to the public" when the doors of the room are closed for the purpose of administering a massage within the privacy of its walls.' (*Id.,* at page 576.) Applying the principle of the *Steinke* case to the facts in this matter, a booth within a movie arcade does not, during the hours said arcade is open for business, become a private place merely because the owner had placed a curtain over the entrance to the booth to darken it 'to permit viewing of the motion pictures.'

"[A]pplying the rationale of the *Dumas* case to the instant matter we hold that the curtained booth was a place open to the public which could be searched without a showing of probable cause or exigency.

" . . . *Katz* v. *United States* [1967] 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507] [is not authority to the contrary].

". . . . . . . . . . . . . . . . . . . .

"The United States Supreme Court has admonished trial judges that the exclusionary rule is not governed by a pat formula by which the reasonableness of police conduct is tested, but is, instead, dependent upon a review of each case 'on its own facts and circumstances' (*Go-Bart Importing Co.* v. *United States* [1931] 282 U.S. 344, 357 [75 L.Ed. 374, 382, 51 S.Ct. 153]; see also *People* v. *Ingle* [1960] 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577]).

". . . . . . . . . . . . . . . . . . . .

"In *Katz* v. *United States* [1967] 389 U.S. 347, governmental agents intercepted a telephone conversation in a public booth by means of an electronic listening device. The Supreme Court pointed out that in using a public telephone booth constructed partly of glass 'one who occupies it, shuts the door behind him, and pays the toll that permits him to place a call is surely entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world.' (389 U.S. at p. 352 [19 L.Ed.2d at p. 582].) Thus in *Katz,* the petitioner, although in a public place, was involved in an activity which is universally respected as private under even minimal standards of decent behavior.

"In *People* v. *Triggs* [1973] 8 Cal.3d 884 [106 Cal.Rptr. 408, 506 P.2d 232], the police were engaged in a clandestine observation of a toilet stall

'a place . . . which is ordinarily understood to afford personal privacy to individual occupants.' (*Id.,* at 890 quoting from *Britt* v. *Superior Court* [1962] 58 Cal.2d 469 at page 472 [24 Cal.Rptr. 849, 374 P.2d 817].) Again, as in *Katz,* it is *objectively* evident that the *ordinary* use of a public toilet stall is to perform a human activity of the most personal nature. [Fn. omitted.]

"*Pate* v. *Municipal Court* [1970] 11 Cal.App.3d 721 [89 Cal.Rptr. 893] is argued as supportive of defendant's position. This is surprising since *Pate* does not involve the reasonableness of a police search in a *public* place, but, instead, deals with peeping by governmental officials into a motel room after mounting a trellis outside a second-floor window. The Court of Appeal in *Pate* agreed with the appellant's contention that 'like a man's home, a motel room is his castle.' (*Id.,* at 724.) The Supreme Court of the United States long before the *Katz* decision, had extended Fourth Amendment protection to hotel rooms (see *Johnson* v. *United States* [1947] 333 U.S. 10 [92 L.Ed. 436, 68 S.Ct. 367]). The *Pate* decision's application of the *Johnson* rule to a *motel* room was a small but sure step in the field of search and seizure law, but quite remote from the question of a patron's reasonable expectation of privacy in a public movie arcade. In *People* v. *Sneed* [1973] 32 Cal.App.3d 535 [108 Cal.Rptr. 146], governmental officials flew a helicopter at an illegal and unreasonable low height, subjecting the occupant of a ranch to noisy police observations which were held to constitute an 'unreasonable governmental intrusion into the serenity and privacy of *his* backyard' (italics added) (*Id.,* at 543). Since the facts in the matter before this court do not involve an intrusion into the appellant's private property, that case does not require a decision contrary to that which we here reach.

"In *Jacobs* v. *Superior Court* [1973] 36 Cal.App.3d 489 [111 Cal.Rptr. 449] governmental officials 'peeked through an aperture in a venetian blind into a *closed* business establishment at about 8:40 p.m.' (italics added) (*Id.,* at 491). Access to the window was obtained by stepping into a planter area which was 'not a common walkway or pathway' (*Id.,* at 492). It should also be noted that the court in *Jacobs* relied on footnote 8 in *People* v. *Dumas* [1973] 9 Cal.3d 871, 882 wherein the Supreme Court observed, 'Homes and *offices* clearly fall within this category of maximum protection.' In the matter before this court the business establishment was open, not closed, to the public and the officers did not venture into any area which was barred to patrons.

"In *Jacobs* v. *Superior Court* [1973] 36 Cal.App.3d 489 the Court of Appeal set forth the modus operandi for a court faced with an issue involving governmental searches into hidden places: **(3)** 'The basic test as to whether there has been an unconstitutional invasion of privacy is whether the person has exhibited a subjective expectation of privacy which is objectively reasonable and, if so, whether that expectation has been violated by unreasonable governmental intrusion.' (*Id.,* at pp. 493-494. See also *People* v. *Edwards* [1969] 71 Cal.2d 1096, 1100 [80 Cal.Rptr. 633, 458 P.2d 713].)

"[T]he facts before the trial court do not meet either facet of this test.

■ "The uncontroverted evidence before the trial court established that the appellant was in a public place at the time his conduct was observed. The fact that the proprietor of the movie arcade had placed a curtain over the front of the booth did not convert the booth into a private place. There is no question that the appellant "expected his privacy to be maintained" and the parties so stipulated. Such expectation was not reasonable in a public place during business hours.

"The fact that the defendant secretly expected that his allegedly lewd conduct would not be discovered, because of the curtain, does not demonstrate an objectively reasonable expectation of privacy. In *Dean* v. *Superior Court* [1973] 35 Cal.App.3d 112 [110 Cal.Rptr. 585], the petitioner also contended that the fact he was engaged in illegal activities (cultivation of cannabis sativa) demonstrated his insistence on privacy because his activities exposed him to prison. The court in *Dean* disposed of this contention as follows:

" 'Petitioner erroneously gives identity to two unlike notions—an internal, uncommunicated need for privacy and a reasonable, exhibited expectation of privacy. Only the latter qualifies as a Fourth Amendment determinant. "The courts have implicitly recognized that man requires some sanctuary in which his freedom to escape the intrusions of society is all but absolute. . . . Certain other places carry with them an expectation of privacy which, although considerable, is less intense and insistent. . . . This hierarchy of protection arises not from the application of differing constitutional standards to various locales, but rather from an application of a single standard of reasonableness to all places in accordance with a fundamental understanding that a particular intrusion into one domain of human existence seriously threatens personal security, while the same

intrusion into another domain does not." (*People* v. *Dumas, supra,* 9 Cal.3d at pp. 882-883.)

" 'Judicial statements like the foregoing disclose that mankind's common habits in the use of domestic and business property supply a prime measure of the reasonableness of expectations of privacy. (See also, cases summarized in *Lorenzana* v. *Superior Court, supra,* 9 Cal.3d at pp. 631-634 [108 Cal.Rptr. 585, 511 P.2d 33], and *People* v. *Sneed, supra,* 32 Cal.App.3d at pp. 541-542.) One who builds a swimming pool and sun-bathing area in his backyard expects privacy (hence immunity) from aerial inspection. Areas reasonably used in ordinary business operations are assumedly entitled to similar immunity. Such areas are expectedly private according to the common habits of mankind. So was the area exposed to helicopter surveillance in *People* v. *Sneed, supra*; to the *Sneed* court, the area was the occupant's "backyard." (32 Cal.App.3d at p. 542.)' (*Id.,* at 117.)

"Applying the common-habits-of-mankind test formulated in the *Dean* case to these facts, it is quite evident that appellant's expectation of privacy was unreasonable. The common habits of mankind in viewing a motion picture in a public place do not objectively communicate to governmental officials an expectation of privacy. Motion picture theaters are normally darkened and closed to outside light and distraction to heighten and facilitate the anticipated visual experience. The arresting officers did not surreptiously peer into an area which is (1) in the nature of a man's castle, such as a home or office, a motel room, or a fenced backyard, or (2) eavesdrop or make clandestine observations of matters ordinarily understood by all decent persons to be private or intimate, such as a telephone conversation or the elimination of bodily waste. Instead, in a public place which exhibited sexually explicit films, they pushed back a curtain to look for juveniles and to determine if any persons were engaging in lewd acts.

"One further fact deserves comment which alone validates the action of the trial court in denying the defendant's motion. As noted above, at the time the officers parted the curtain on the booth they were looking for juveniles. In California, law enforcement officers are charged with the duty of protecting children by enforcing section 313.1 of the Penal Code which provides as follows:

" '(a) Every person who, with knowledge that a person is a minor, or who fails to exercise reasonable care in ascertaining the true age of a

minor, knowingly distributes, sends, causes to be sent, exhibits, or offers to distribute or exhibit any harmful matter to the minor is guilty of a misdemeanor.

" '(b) Every person who misrepresents himself to be the parent or guardian of a minor and thereby causes the minor to be admitted to an exhibition of any harmful matter is guilty of a misdemeanor.'

"As noted above, the stipulated facts show that the movie arcade was showing sexually explicit films. Since it is quite obvious that age cannot be determined by shoe size, it was necessary, because the *management* of a *public* movie arcade chose to curtain the booths, for the police to part the curtain to determine (1) whether the patron in the booth was under eighteen years of age and if so, (2) whether the "sexually explicit" films contained matter harmful to minors."

In sum, it was for the trial court to determine, under the facts, what the purpose of the curtain was. The court found that it was not present to secure privacy but rather to shut out excessive light. Under such a factual state, no reasonable expectation of privacy existed and the observation by law enforcement officers was not an unconstitutional intrusion.

Judgment affirmed.

Ashby, J., concurred.

KAUS, P. J., Dissenting.—This case proves that reasonable judges can differ on whether a subjective expectation of privacy is objectively reasonable or a legal pipedream. Personally, I should have thought that regardless of the primary purpose of the curtain, it was objectively reasonable for defendant to expect that police officers would leave him alone for the two or three minutes it took him to get his quarter's worth of "entertainment."

I therefore dissent.

Appellant's petition for a hearing by the Supreme Court was denied April 21, 1977. Tobriner, J., was of the opinion that the petition should be granted.